## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* MATTHEW SWERDLOFF

[Misc. Docket (Subtitle BV) No. 21, September Term, 1975.]

*Decided February 1, 1977.*

The cause was submitted to MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

### O R D E R

This Court having considered the recommendation of the Supreme Bench of Baltimore City and the record filed in the above entitled matter, and no exceptions having been filed, it is this 1st day of February, 1977

ORDERED, by the Court of Appeals of Maryland, that the recommendation be adopted and that Matthew Swerdloff be, and he is hereby, disbarred from the further practice of law in the State of Maryland; and it is further

ORDERED that the clerk of this Court shall forthwith strike the name of Matthew Swerdloff from the register of attorneys and shall certify that fact to the Trustees of the

Clients' Security Trust Fund and the clerks of all judicial tribunals in the State in accordance with Rule BV13.

/s/ Robert C. Murphy

/s/ Frederick J. Singley, Jr.

/s/ Marvin H. Smith

Filed: February 1, 1977        /s/ J. Dudley Digges

/s/ James H. Norris, Jr.       /s/ Irving A. Levine
        Clerk
Court of Appeals of Maryland    /s/ John C. Eldridge

/s/ Charles E. Orth, Jr.

## MEMORANDUM AND RECOMMENDATION

Pursuant to Maryland Rule BV9, the Court of Appeals of Maryland designated the undersigned judges as a panel for the hearing of charges brought against the Respondent by the Attorney Grievance Commission of Maryland. A hearing was held before the panel on November 24, 1976.

## FINDINGS OF FACTS

On December 11, 1975, Respondent pleaded guilty in the United States District Court for the District of Maryland to the charge of falsely and fraudulently subscribing to a joint income tax return by willfully and knowingly, under penalty of perjury, understating his gross income for the year 1973 by $3,300. The remaining 17 counts of the pertinent indictment were nolle prossed by the United States Attorney pursuant to a plea bargain. On February 18, 1976, Respondent received a two-year sentence, of which 179 days were to be in confinement, and the balance of the term was suspended.

Approximately 10 months before Respondent pleaded guilty, he was tried on mail fraud charges. This resulted in a

mistrial because Respondent suffered a coronary attack during the tenth day of trial. While in the hospital, Respondent also suffered a "cerebral vascular accident." Respondent was reindicted, and he went to trial on December 3, 1975. His heart had to be monitored regularly during the trial by a portable EKG unit, and he was also under prescribed medication. After the prosecution finished its case, Respondent pleaded guilty as previously mentioned. Respondent asserted at this Disciplinary Hearing that he pleaded guilty because of the danger of aggravating his already precarious physical condition by continuing with the trial, where he would shortly have been subjected to rigorous, strenuous and lengthy cross-examination. Respondent further testified, however, that he was in fact guilty of this tax fraud charge. Respondent further conceded that this conviction was of a crime involving moral turpitude.

Respondent has been a member of the Maryland Bar since 1956, and no further examples of Respondent's misconduct were brought to the panel's attention.

## CONCLUSIONS OF LAW

Respondent first contends that his criminal conduct "did not so adversely bear upon his moral fitness to practice law so as to warrant disbarment or render him incapable of maintaining the integrity of the bar." We disagree. It is now well settled in this state that

> "when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances . . . disbarment follow[s] as a matter of course . . ." *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 553 (1974).

Moreover, willful tax evasion, proscribed by 26 U.S.C., § 7201, is in that class of crimes which involve moral turpitude and are "infested with fraud, deceit and dishonesty" that "will result in automatic disbarment when

the respondent fails to demonstrate by clear and convincing evidence a compelling reason to the contrary." *Agnew, supra,* 271 Md. at 551; *Maryland St. Bar Ass'n v. Callanan,* 271 Md. 554, 556 (1974); *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 524 (1975).

That Respondent was convicted of a violation of 26 U.S.C., § 7206 (1), instead of the § 7201 offense involved in the three cases referred to above, is immaterial. Respondent's offense, making a false and fraudulent income tax statement, is similarly "infested with fraud, deceit and dishonesty." Respondent's offense, as he himself concedes, involves moral turpitude.

The "compelling extenuating circumstances" necessary to avoid disbarment that Respondent relies on are the physical and mental adversities which he has endured since the criminal prosecution were commenced. What was said in *Callanan, supra,* 271 Md. at 557, and *Seigel,* 275 Md. at 527, is dispositive here: while the "health problem is distressing . . . we conclude that since [it] . . . developed subsequent to his criminal activity, and then only because it was detected . . . (it does) not serve to palliate the evil of his offense." Respondent's coronary and cerebral conditions, admittedly serious, occurred after the commencement of the Respondent's first criminal trial and after the commission of the crime to which he pleaded guilty.

Respondent also points in mitigation to his "unblemished" reputation as a member of the Bar for 20 years. In rejecting an identical argument as to an attorney who was at the Bar for over 40 years, *Seigel* stated as follows (275 Md. at 528-529):

> ". . . because 'an attorney's character must remain beyond reproach,' this 'Court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for

the profession and a prophylactic for the public' .... Our constancy in the responsibility cannot be shaken by our respect for an individual attorney's reputation, by our recognition of the longevity of his career at the bar, or by our appreciation for his service to the community."

We are bound to reach the same conclusion here.

Since Respondent was convicted of a crime involving moral turpitude and has not demonstrated compelling extenuating circumstances to justify a lesser sanction, we have no alternative but to recommend disbarment, this 9th day of December, 1976.

/s/ John R. Hargrove

/s/ Martin B. Greenfeld

/s/ Robert L. Sullivan, Jr.