# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 5, 2012 Session

## BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE v. THOMAS EWING COWAN

### Direct Appeal from the Chancery Court for Carter County
### No. 27783      Walter C. Kurtz, Senior Judge

---

### No. E2012-00377-SC-R3-BP - Filed November 19, 2012

---

This appeal involves a determination of the proper final discipline for an attorney who pleaded guilty to willful tax evasion. We hold that because ABA Standard for Imposing Lawyer Sanctions 5.11(b) applies to criminal acts such as those admitted by the attorney here, the trial court's order of disbarment is affirmed.

### Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Trial Court Affirmed

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Thomas E. Cowan, Jr., Elizabethton, Tennessee, pro se.

Nancy S. Jones, Chief Disciplinary Counsel, and Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

### OPINION

### <u>Factual and Procedural History</u>

Mr. Thomas Ewing Cowan is an attorney originally licensed to practice law in Tennessee in 1968. On September 25, 2009, Mr. Cowan pleaded guilty in federal district court to one count of the felony offense of willful attempt to defeat or evade the payment of taxes in violation of 26 U.S.C. § 7201 (2006).[1] The court subsequently sentenced Mr. Cowan

---

[1] "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title
(continued...)

to a term of imprisonment of twelve months and one day, a term of supervised release of three years, and restitution in the amount of $270,169.

On March 1, 2010, this Court suspended Mr. Cowan's license to practice law and referred the matter to the Board of Professional Responsibility ("Board") for determination of final discipline to be imposed pursuant to Tennessee Supreme Court Rule 9, section 14. On March 4, 2010, the Board filed a Petition for Final Discipline.

The matter came before a Hearing Panel on October 14, 2010. The only issue before the Panel was the extent of final discipline to be imposed as a result of the admitted criminal act. See Tenn. Sup. Ct. R. 9, § 14.4. In reaching its decision, the Panel considered the ABA Standards for Imposing Lawyer Sanctions ("Standards"), see Tenn. Sup. Ct. R. 9, § 8.4, including Standards 5.11 and 5.12:

> 5.11 Disbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
>
> 5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

A majority of the Panel decided that Mr. Cowan should not be disbarred from the practice of law based upon the following findings:

> After hearing arguments from the Board and Respondent, the Panel concludes that ABA Standard 5.11(a) is not applicable, since it recommends

---

[1](...continued)
or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ." 26 U.S.C. § 7201. Mr. Cowan was originally charged with three additional counts of willful failure to file an income tax return in violation of 26 U.S.C. § 7203 (2006) ("Any person required under this title to pay any . . . tax, . . . who willfully fails to pay such . . . tax, . . . shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . . .").

disbarment for attorneys who engage in serious criminal conduct only if the crime contains [particular elements]. The elements of the crime of tax evasion are a tax deficiency, an evasive act, and a willful act, none of which are included in the list of elements in Standard 5.11(a), rendering that Standard inapplicable.

Further, the Panel has determined that ABA Standard 5.11(b) is also inapplicable because "any *other* intentional conduct" applies to conduct other than "criminal offenses," since Standard 5.11(a) refers to criminal offenses.

Instead, the Panel found that Standard 5.12, calling for a suspension, was applicable "because it specifically refers to 'criminal conduct' and because the Panel finds that Respondent's conduct seriously adversely reflects on his fitness to practice law." The Panel also found the existence of several aggravating factors—prior disciplinary history, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law—and only one mitigating factor—imposition of other penalties or sanctions. On balance, the Panel concluded that the aggravating factors outweighed the lone mitigating factor and imposed a suspension of two years.

The Panel Chair dissented from the findings and judgment of the majority, opining that both subdivisions of Standard 5.11, as well as Standard 7.1,[2] applied to the case and warranted disbarment of Mr. Cowan.

The Board filed an appeal in the Chancery Court for Carter County; further proceedings were stayed until Mr. Cowan was released from federal custody. The chancellor ultimately modified the decision of the Panel and disbarred Mr. Cowan, finding that willful tax evasion "clearly involved misrepresentation, fraud or deceit, and therefore ABA Standard 5.11(a) applies."

In reaching this conclusion, the chancellor noted that Mr. Cowan pleaded guilty, in count one of the indictment—not merely to tax evasion—"but willful tax evasion involving affirmative acts." The chancellor considered the affirmative acts admitted by Mr. Cowan in the plea agreement, namely the "use of nominee entities," as well as additional affirmative acts listed in count one of the indictment, including:

---

[2] Standard 7.1 provides: "Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."

concealing his true income and assets by diverting checks that had the inherent appearance of income into the checking account of a family member, cashing checks that had the inherent appearance of income, depositing earned income into his law firm trust accounts, and making personal payments from his law firm trust account, and by otherwise using his attorney trust account to conceal income and nominees to conceal the ownership of assets from the United States.

From this, the chancery court determined that "Mr. Cowan engaged in affirmative acts to hide income from the government, and this is conduct of a fraudulent nature, deceitful, and involving intentional misrepresentation."

The chancellor noted that other state supreme courts had disbarred attorneys following convictions for the same federal crime: Attorney Grievance Commission v. Gary, 452 A.2d 1221 (Md. 1982) (affirming disbarment for felony conviction of willful tax evasion and noting that such conduct involves dishonesty, fraud, deceit, or misrepresentation); Maryland State Bar Association v. Agnew, 318 A.2d 811, 815 (Md. 1974) (disbarring attorney for felony conviction of willful tax evasion and noting that such conduct "is infested with fraud, deceit, and dishonesty"); In re Grimes, 326 N.W.2d 380 (Mich. 1982) (disbarring attorney for felony convictions of willful tax evasion and counseling client to lie to investigators in tax fraud case).

As to the Standards, the chancery court found that Mr. Cowan's conduct fell within Standard 5.11:

> The Court finds incorrect the Panel's decision that [Standard] 5.11 is not to be applied to willful tax evasion. Willful tax evasion, especially involving affirmative acts to hide income is a crime of deceit and/or misrepresentation and/or fraud, and it clearly reflects on the lawyer's fitness to practice. The finding by the Panel that [Standard] 5.11 does not apply is unsupported by the evidence. [Standard] 5.11 does apply.

However, the chancery court did not specify at this point whether Standard 5.11(a) or (b) applied, nor did the court address Standard 7.1.

Finally, the chancery court considered the aggravating and mitigating factors proffered by the parties. The chancellor found that "the aggravating circumstances are extremely strong," citing Mr. Cowan's disciplinary record of two suspensions, three public censures, and fifteen private admonishments. The court further noted, "Mr. Cowan is presently serving a three-year suspension due to misconduct involving pervasive neglect, misrepresentation,

and failure to communicate with clients and the Board." The chancellor concluded that this disciplinary record carried "substantial negative weight." Citing Standard 9.22, the chancellor found the existence of four additional aggravating factors: Mr. Cowan's pattern of misconduct, multiple offenses, refusal to acknowledge the wrongfulness of his conduct, and substantial experience in the practice of law.

Mr. Cowan offered as mitigating factors his service as a lawyer in the military during the Vietnam War, his representation of indigent defendants, and his leadership roles with Legal Services of Upper-East Tennessee.[3] The chancellor ruled that Mr. Cowan's service to his country and his community could "in no way mitigate his substantial history of disciplinary violations," and that considering the aggravating and mitigating factors did not change the presumptive sanction of disbarment. He therefore modified the Panel's judgment and disbarred Mr. Cowan. Mr. Cowan has appealed.

### Standard of Review

As part of our inherent duty to regulate the practice of law in Tennessee, this Court bears the ultimate responsibility for sanctioning attorneys who violate ethical rules. Talley v. Bd. of Prof'l Responsibility, 358 S.W.3d 185, 190 (Tenn. 2011). In furtherance of this duty, we have established a system where attorneys charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel, which must determine the disciplinary penalty. See Tenn. Sup. Ct. R. 9, § 8.2. An attorney dissatisfied with a disciplinary decree from a hearing panel may prosecute an appeal to the circuit or chancery court and then directly to this Court where our review is upon the transcript of the record from the trial court, including that of the evidence before the hearing panel. Tenn. Sup. Ct. R. 9, § 1.3. We observe the same standard of review as that followed by the circuit or chancery court. Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 612 (Tenn. 2010). Like the chancery court, we will not disturb the hearing panel's decision unless

> the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3. Moreover, we do not substitute our judgment for that of the hearing panel as to the weight of the evidence on questions of facts, but we review questions

---

[3] Legal Services of Upper-East Tennessee is now part of Legal Aid of East Tennessee.

of law de novo without a presumption of correctness. <u>Sneed</u>, 301 S.W.3d at 612; <u>see also</u> Tenn. Sup. Ct. R. 9, § 1.3.

<h2 style="text-align:center"><u>Analysis</u></h2>

The primary issue in this case is whether disbarment or suspension is the more appropriate sanction. To answer this question we must review the process by which a hearing panel makes that initial determination.

As a guidepost in determining appropriate, consistent sanctions for attorney misconduct, we consult the ABA Standards for Imposing Lawyer Sanctions. <u>Lockett v. Bd. of Prof'l Responsibility</u>, ___ S.W.3d ___, ___ (Tenn. 2012); <u>Rayburn v. Bd. of Prof'l Responsibility</u>, 300 S.W.3d 654, 664 (Tenn. 2009); <u>Bd. of Prof'l Responsibility v. Allison</u>, 284 S.W.3d 316, 327 (Tenn. 2009). The Standards recommend the *type* of sanction—such as disbarment or suspension—that the ABA Sanctions Committee deems generally appropriate for various kinds of misconduct. As the Preface explains, the ABA model does not consider the intent of the attorney but looks instead to the duty violated, the attorney's mental state, and any actual or potential injury. Standards 4, 5, and 6 classify conduct according to whom a duty is owed—whether clients, the public, or the legal system—while Standard 7 addresses violations of other duties owed as a professional.

Once a presumptive sanction is determined, Standard 9 then provides that a greater or lesser sanction may be appropriate due to the existence of aggravating or mitigating factors. We have recently held that the factors enumerated in Standard 9 are "illustrative rather than exclusive." <u>Lockett</u>, ___ S.W.3d at ___ (overruling <u>Threadgill v. Bd. of Prof'l Responsibility</u>, 299 S.W.3d 792 (Tenn. 2009)). Other factors may also be considered.

Thus, any analysis of the proper discipline involves two steps: first, identify the presumptively appropriate sanction applicable to the established misconduct, and then consider whether that sanction should be increased or decreased due to aggravating and mitigating circumstances, if any.

<h3 style="text-align:center"><u>Presumptive Sanctions</u></h3>

At the outset, we consider the ABA Standards for Imposing Lawyer Sanctions that most plausibly apply to Mr. Cowan:

5.11    Disbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing,

misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

The question before us is which standard more closely fits the facts of this case.

The plain language of Standard 5.11(a) recommends disbarment for certain kinds of "serious criminal conduct." Disbarment is also the presumptive sanction under Standard 5.11(b) for "any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." We have little difficulty concluding that a "person who willfully attempts in any manner to defeat or evade any tax," 26 U.S.C. § 7201, necessarily engages in "intentional conduct involving dishonesty . . . that seriously adversely reflects on a lawyer's fitness to practice law."[4]

However, Mr. Cowan argues that because Standard 5.11(a) explicitly applies to "serious criminal conduct," while Standard 5.11(b) references "other intentional conduct," Standard 5.11(b) does not apply to *any* criminal conduct. Moreover, Mr. Cowan notes that Standard 5.12 explicitly applies to "criminal conduct" in support of his position that Standard 5.12—not Standard 5.11(b)—covers criminal conduct that does not lie within the purview of Standard 5.11(a).

This appeal hinges upon the following question of first impression: given that Standard 5.11(b) does not specifically refer to criminal conduct, does that standard encompass criminal conduct? Based on the Comment to Standard 5.11, the context provided by Standards 5.1 through 5.14, and the application of Standard 5.11(b) to criminal conduct by the highest courts of several states, we answer that question in the affirmative.

The Comment to Standard 5.11 provides: "A lawyer who engages in any of the illegal acts listed above has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity." Because this statement appears directly

---

[4] We need not decide whether willful tax evasion implicates "fraud, deceit, or misrepresentation," in addition to "dishonesty."

below Standard 5.11, the "illegal acts listed above" must not refer solely to the crimes specified in Standard 5.11(a).  Indeed, as an example of conduct warranting disbarment, the Comment cites In re Grimes as "a case where a lawyer was convicted of two counts of federal income tax evasion and one count of subornation of perjury."  Although subornation of perjury presumably falls within Standard 5.11(a), the Michigan Supreme Court stressed what would become the three elements of Standard 5.11(b): intentionality,[5] dishonesty,[6] and a lack of fitness to practice law.[7]

The idea that criminal conduct must be pigeonholed into Standard 5.11(a) or 5.12, if anywhere, is also belied by Standard 5.1:

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation.

This overview paragraph precedes, not only Standards 5.11 and 5.12, but also 5.13 and 5.14:

> 5.13    Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

> 5.14    Admonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

Standards 5.13 and 5.14, like Standard 5.11(b), do not explicitly reference criminal conduct, but the structure of Standards 5.1 through 5.14 implies that "other conduct" may include

---

[5] In re Grimes, 326 N.W.2d at 383 ("Grimes was convicted of *willful evasion* of taxes under 26 U.S.C. § 7201, not of misdemeanor failure to file income tax returns under 26 U.S.C. § 7203.  Jurors in the criminal prosecution disbelieved Grimes' . . . assertion that there had been no *deliberate* attempt to avoid paying taxes." (second emphasis added)).

[6] Id. (finding proper the hearing panel's conclusion that tax evasion was "conduct involving dishonesty, fraud, deceit, or misrepresentation").

[7] Id. ("We cannot ask the public to voluntarily comply with the legal system if we, as lawyers, reject its fairness and application to ourselves." (internal quotation marks omitted)).

"criminal conduct." Indeed, a contrary interpretation would imply that the Standards fail to provide *any* sanction less serious than suspension for criminal conduct precisely *because* the conduct was criminal. We decline to interpret the Standards in such a way that much criminal conduct would lie entirely outside of this framework.

In addition to the plain language of the Standards, we note that courts in other states have disbarred attorneys by applying Standard 5.11(b) to criminal conduct. E.g., In re DeRose, 55 P.3d 126 (Colo. 2002) (conviction for aiding and abetting structuring of transactions to evade federal financial reporting requirements, 31 U.S.C. §§ 5322(a), 5324(a)(3)); Att'y Grievance Comm'n v. Bereano, 744 A.2d 35 (Md. 2000) (convictions for seven counts of mail fraud, 18 U.S.C. §§ 1341, 1346); In re Cramer, 225 P.3d 881 (Wash. 2010) (en banc) (uncharged criminal conduct); In re Vanderveen, 211 P.3d 1008 (Wash. 2009) (en banc) (conviction for willful failure to file a currency report, 31 U.S.C. §§ 5331(a), 5322(a)); cf. Gary, 452 A.2d at 1222 ("The crime of willful tax evasion constitutes conduct involving dishonesty, fraud, deceit or misrepresentation."); Agnew, 318 A.2d at 815 (characterizing the crime of willful tax evasion as "infested with fraud, deceit, and dishonesty").

We agree with those states that deem Standard 5.11(b) applicable to criminal conduct. Because Mr. Cowan's willful attempt to defeat or evade taxes constitutes (1) intentional conduct (2) involving dishonesty that (3) seriously adversely reflects on his ability to practice law, Standard 5.11(b) applies to create a presumption that disbarment is the correct sanction.

Because the Hearing Panel's decision otherwise is in violation of the rules applicable to this determination, its judgment on this issue is reversed.[8]

---

[8] Because we find that the crime of willful tax evasion is intentional conduct involving dishonesty that seriously adversely reflects on the lawyer's fitness to practice, see Standard 5.11(b), we need not decide whether willful tax evasion constitutes "serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft," as described in Standard 5.11(a). Similarly, because Standard 5.11(b) applies, Standard 5.12 (encompassing "conduct which does not contain the elements listed in Standard 5.11") does not. Finally, we need not determine whether willful tax evasion violates the duty an attorney owes as a professional or whether it "causes serious or potentially serious injury to a client, the public, or the legal system" as required by Standard 7.1.

<u>Aggravating and Mitigating Factors</u>

Having determined that disbarment is the presumptively correct sanction for the misconduct established by the criminal plea agreement, we move on to consider the existence and effect of any factors in aggravation or mitigation. Though we do not restrict this balancing to the factors enumerated in Standard 9, <u>Lockett</u>, ___ S.W.3d at ___, we begin there.

The Panel found four aggravating factors: prior disciplinary history, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.[9] Mr. Cowan does not challenge the applicability of these factors. He does dispute the significance of his disciplinary record, however, and suggests that attorneys long in practice inevitably encounter a few disgruntled clients. This rationalization is not persuasive because of the frequency and increasing severity of Mr. Cowan's prior punishments: *fifteen* private admonishments, most of which arose from Mr. Cowan's repeated failure to communicate with clients or respond to disciplinary complaints; three public reprimands; and two suspensions. As aptly summarized by the chancery court:

> Mr. Cowan was publicly censured on November 28, 1991, for charging an excessive fee, neglecting a child support case, and failing to pay two doctors' deposition fees from settlement proceeds. He was publicly censured on June 22, 1995, for contempt of court. He was publicly censured a third time on February 12, 2000, for neglecting a client's case and for failing to respond timely to the disciplinary complaint. Mr. Cowan was suspended from the practice of law for 30 days on December 15, 2002, for a pattern of failing to timely submit divorce judgments for signature and of failing to timely file said judgments in divorce matters. Finally, Mr. Cowan is presently serving a three-year suspension due to misconduct involving pervasive neglect, misrepresentation, and failure to communicate with clients and the Board.

We agree with the chancery court that Mr. Cowan's disciplinary record "involving pervasive neglect, misrepresentation, and failure to communicate with clients and the Board," carries substantial negative weight. Even a three-year suspension did not improve Mr. Cowan's understanding of his ethical obligations.

Mr. Cowan suggested many facts to be considered in mitigation, but the Panel found applicable only one ABA mitigating factor—the imposition of other penalties or sanctions, as enumerated in Standard 9.32(k). Although Mr. Cowan has suffered penalties (including

---

[9] <u>See</u> Standard 9.22(a), (c), (d), (i).

imprisonment) for his conviction, this factor is inapplicable here because the criminal penalties were imposed as punishment. "The consideration of other penalties or sanctions imposed on a respondent attorney is appropriate when those penalties or sanctions arise out of the disciplinary proceedings themselves or have been imposed by another jurisdiction's disciplinary board for the same conduct." Lockett, ___ S.W.3d at ___. Because Mr. Cowan's previous penalties arose out of his criminal prosecution in federal court, they do not constitute mitigation. The need to protect the public from attorneys unfit to practice law is not abated merely because criminal penalties have already been imposed. See In re Rivkind, 791 P.2d 1037, 1042 (Ariz. 1990) ("The goal in disciplinary proceedings is to protect the public in the future, not to punish the offender."); Fred C. Zacharias, The Purposes of Lawyer Discipline, 45 Wm. & Mary L. Rev. 675, 688 & n.45 (2003) (collecting cases).

In his brief before this Court, as well as during his testimony before the Panel, Mr. Cowan raises several other circumstances that he contends should be considered in mitigation of his presumptive punishment. Specifically, Mr. Cowan argues that his voluntary service in the Judge Advocate General's Corps for four years during the Vietnam War (during which he suffered a service-related disability), his pro bono representation of indigent defendants by appointment (including a $2,000,000 theft case), and his service as a founding director and board member of Legal Services of Upper-East Tennessee weigh against his disbarment. With respect to the conduct for which Mr. Cowan was convicted, he asks that we consider as mitigation that he (1) lost the services of his secretary, who handled tax matters, in 2000; (2) diverted much of the income for which he avoided taxes to his daughter's medical expenses related to her cancer treatment; (3) received no notice from the IRS regarding his delinquent taxes until 2005; and (4) underwent an audit by the IRS in 2001—a year in which he paid $78,000 in taxes. Finally, Mr. Cowan emphasizes that his wife and daughter, both attorneys, have chosen to pursue careers in public service.

As to these circumstances, we agree with the chancery court that Mr. Cowan's service to his country and his community "in no way mitigate his substantial history of disciplinary violations." It is disturbing that an attorney with a long disciplinary history is entrusted to represent indigent defendants. The circumstances proffered by Mr. Cowan as to his tax situation are self-serving and simply irrelevant for mitigation purposes, because the conviction from which this disciplinary action arose stemmed from his conduct between 1993 and 1997, not for actions after 2000. And although Mr. Cowan is understandably proud of the service and distinction achieved by his wife and daughter, we cannot consider their conduct in mitigation of Mr. Cowan's. Each attorney is independently required to follow the Rules of Professional Conduct.

In addition, we are very troubled by Mr. Cowan's attempt in his brief to minimize the seriousness of his criminal offense: "The very sentence imposed in this case reflects

favorably upon Appellant and indicates that in the federal court system, tax evasion cases are not considered serious crimes; the sentence imposed involved time at a minimal community security facility, without fences, guards, or any restraints upon a person leaving." Suffice it to say, we *do* consider tax evasion a "serious crime" and have so indicated in our Rules. See Tenn. Sup. Ct. R. 9, § 14.2 (defining "serious crime" to include "willful failure to file income tax returns" for purposes of interim suspension).

 "The license to practice law in this State is a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court." Tenn. Sup. Ct. R. 9, § 3.1. A law license, in short, is a privilege and not a right. Sneed, 301 S.W.3d at 618. "It is the duty of every recipient of that privilege to act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." Tenn. Sup. Ct. R. 9, § 3.1. Where this duty is not met, we must act to protect the public. Sneed, 301 S.W.3d at 618. While we do not lightly disbar an attorney, whose livelihood may depend on his practice, we take seriously our obligation to supervise and regulate the profession. Id. On the facts of this case, we agree with the chancery court that disbarment is the appropriate sanction.[10]

## Conclusion

Because ABA Standard 5.11(b) applies to the criminal acts committed by Mr. Cowan, and the aggravating circumstances substantially outweigh any mitigating factors in this case, we affirm the chancery court's judgment in all respects, including the disbarment of Mr. Cowan. The costs of this appeal are taxed to Mr. Cowan and his surety, for which execution may issue, if necessary.

_____
CORNELIA A. CLARK, JUSTICE

---

[10] We note that Mr. Cowan's conviction for willful tax evasion, 26 U.S.C. § 7201, is distinguishable from the conviction in Lockett, ___ S.W.3d at ___, for willful failure to file tax returns, 26 U.S.C. § 7203 ("Any person required under this title to pay any . . . tax, . . . who willfully fails to pay such . . . tax, . . . shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . . ."). In Lockett, we held that "willful failure to file income tax returns meets the requirements of ABA Standard 5.12." ___ S.W.3d at ___. Both crimes entail "willful" conduct, but federal courts have held that willful tax evasion, a felony, requires "an affirmative step to elude or defeat the payment of taxes," e.g., United States v. Collins, 685 F.3d 651, 656 (7th Cir. 2012), whereas willful failure to file tax returns, a misdemeanor, requires no affirmative action, e.g., United States v. Hassebrock, 663 F.3d 906, 917 (7th Cir. 2011).